UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER MOENIG,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | No. 2:14-cv-01399-KJM-EFB<br><br><br><br>ORDER |

        Defendants Bank of America, N.A. (BofA) and Mortgage Electronic Registration Systems, Inc. (MERS) (collectively, defendants) have filed a motion to dismiss. The court ordered the motion submitted without argument and now GRANTS the motion.

I. BACKGROUND

        On June 11, 2014, plaintiff filed a complaint seeking a declaration that defendants do not have the authority to foreclose on his home. Compl., ECF No. 1. The complaint alleges as follows: On May 1, 2003, Margarita Hernandez conveyed the land at 401 11th Street, Sacramento, to plaintiff. *Id.* ¶ 22. In 2008, plaintiff refinanced his home with Plaza Mortgage and signed a Note and Deed of Trust in favor of Plaza. *Id.* ¶¶ 8, 23, 25. The Note provides in part that the lender could transfer it. *Id.* ¶ 23. The Deed of Trust identified Plaza as the lender, Commonwealth Title Company as the Trustee and MERS as a nominee for the Lender and its assigns and the beneficiary under the Security Instrument. *Id.* ¶ 25. The Deed of Trust also

1  notified plaintiff that the Note, together with the security instrument, could be sold without prior
2  notice to the borrower.  *Id*. ¶ 27.

3  At some point, Plaza endorsed the Note to Countrywide Bank, FSB and in a letter
4  dated February 21, 2008, told plaintiff the loan had been transferred to Countrywide, which was
5  now the servicer on the loan.  *Id*. ¶¶ 9-10.  On July 1, 2008, BofA purchased Countrywide, *id*. ¶¶
6  16, 34-35, and subsequently BofA informed plaintiff it holds the Note on plaintiff's property and
7  is listed as the assignee in MERS' records.  *Id*. ¶ 11.  BofA began to send loan statements to
8  plaintiff in May 2009.  *Id*. ¶¶ 17, 28.

9  In April and May 2013, plaintiff sent letters to BofA and MERS asking for copies
10 of the loan documents.  *Id*. ¶¶ 29-30.  In May 2013, BofA sent a copy of the Note and Deed of
11 Trust to plaintiff.  The Note has an endorsement on the last page stating "PAY TO THE ORDER
12 OF: COUNTRYWIDE BANK, FSB WITHOUT RECOURSE PLAZA HOME MORTGAGE,
13 INC."  *Id*. ¶ 33.  BofA purchased Countrywide in 2008.  *Id*. ¶¶ 35-36.  BofA notified plaintiff that
14 it was the servicer for the loan, FNMA (Fannie Mae) owned the loan, and the assignment was
15 recorded through MERS.  *Id*. ¶¶ 36-37.

16 Plaintiff wrote to BofA in May 2013, asking for documents showing that BofA
17 had been assigned the Note and Deed of Trust on the property so he could be sure payments were
18 being made to the appropriate source.  *Id*. ¶ 38.  BofA declined to provide further written
19 responses to the requests.  *Id*. ¶ 40.

20 Plaintiff made all payments through July 1, 2013, but then notified BofA he
21 would withhold further payments until BofA provided copies of documents showing it was the
22 assignee of the Deed of Trust.  *Id*. ¶¶ 18, 41.  Neither BofA nor MERS has responded to
23 plaintiff's request for evidence of the assignment, *id*. ¶¶ 13-15, but BofA has threatened to
24 foreclose on the property.  *Id*. ¶ 19.

25 On August 15, 2013, Plaza Home Mortgage conveyed whatever interest it had in
26 plaintiff's property to plaintiff by a Quitclaim Deed, recorded in Sacramento on August 26, 2013.
27 *Id*. ¶ 42.
28 /////

2

1    In a letter dated November 4, 2013, BofA told plaintiff it was the noteholder and
2 had the right to foreclose. *Id*. ¶ 43.  In December 2013, BofA sent plaintiff a Borrower Response
3 Package, which included forms for a loan modification under the Home Affordable Modification
4 Program (HAMP). *Id*. ¶ 45.

5    In January 2014, plaintiff again asked BofA to document its legal status as
6 "noteholder." *Id*. ¶ 47.  BofA replied that Fannie Mae, the investor, owned the loan. *Id*. ¶ 48.  In
7 May 26, 2014, plaintiff's counsel sent an e-mail to Fannie Mae asking for the date Fannie Mae
8 purchased the promissory note and copies of documents showing the transfer of the note to
9 Fannie Mae. *Id*. ¶ 49.  Fannie Mae did not provide the requested information. *Id*. ¶ 50.

10    The complaint is comprised of three claims:  (1) declaratory judgment; (2) breach
11 of the implied covenant of good faith and fair dealing; and (3) injunctive relief.

12 II.  STANDARDS FOR A MOTION TO DISMISS

13    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to
14 dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may
15 dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged
16 under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
17 1990).

18    Although a complaint need contain only "a short and plain statement of the claim
19 showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion
20 to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a
21 claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
22 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something
23 more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and
24 conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting
25 *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss
26 for failure to state a claim is a "context-specific task that requires the reviewing court to draw on
27 its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the
28 /////

interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

## III. REQUEST FOR JUDICIAL NOTICE

Defendants ask the court to take judicial notice of a Deed of Trust and Assignment of the Deed of Trust, both recorded in Sacramento County. Defs.' Req. for Judicial Notice, ECF No. 8 at 3-4, and plaintiff asks the court to take judicial notice of a Quitclaim Deed, also recorded in Sacramento County. Pl.'s Req. for Judicial Notice, ECF No. 11 at 1-2. Neither side opposes the other's request.

A court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). These documents were recorded in the Sacramento County Recorder's Office and their accuracy may be readily determined. Fed. R. Evid. 201(b)(2). The requests are granted.

The first document is a Deed of Trust recorded on February 14, 2008, for 401 11th Street and 1104 D Street (the property) Sacramento, listing Christopher Moenig as the borrower, Plaza Home Mortgage Inc. as the lender, Commonwealth Land Title Company as the Trustee, and

4

1    MERS "as a nominee for the Lender and the Lender's successors and assigns" and the
2    "beneficiary under this Security Instrument." ECF No. 8 at 6-7, 8. The Deed provides that the
3    Note or a partial interest in the Note, together with the Deed of Trust, "can be sold one or more
4    times without prior notice to the Borrower. A sale might result in a change of the entity (known
5    as the 'Loan Servicer') that collects . . . payments due under the Note . . . and performs other
6    mortgage loan servicing obligations under this Note . . . ." *Id*. at 16. It further notifies the
7    borrower that if the Note is sold, the servicing obligations will not be assumed by the purchaser
8    unless otherwise provided by the purchaser. *Id*. at 17.

9          The second document is a quitclaim deed, recorded August 26, 2013, effecting
10   Plaza Home Mortgage's quitclaiming the property to Moenig. ECF No. 11 at 4. A box on the
11   face of the deed notes there is no documentary transfer tax because the "consideration is less than
12   $100." *Id*.

13         The third document is an Assignment of the Deed of Trust, recorded on
14   October 13, 2013, from MERS to BofA. ECF No. 8 at 26.

15   IV. ANALYSIS

16         Defendants argue plaintiff does not have standing to challenge any foreclosure
17   because he has not tendered the amount due on the mortgage and that he does not otherwise have
18   standing to challenge defendants' authority to foreclose. Mot., ECF No. 7 at 8-11. They also
19   argue plaintiff's claims are conclusory and in some cases demonstrably false. *Id*. at 8, 12. Finally
20   they argue there is no actual controversy because there is no requirement BofA present evidence
21   of its authority to foreclose and also no breach of the implied covenant of good faith and fair
22   dealing for the same reason.

23         Plaintiff maintains he is not alleging wrongful foreclosure but rather that BofA
24   does not have the Deed of Trust on the property, which is a prerequisite to beginning the
25   foreclosure process. Opp'n, ECF No. 10 at 2. He argues seeking declaratory and injunctive relief
26   is an appropriate response to BofA's threat to initiate foreclosure proceedings. *Id*. He quotes
27   something, perhaps from MERS's website but not specifically attributed, suggesting that MERS
28   /////

is "merely a private tracking system" for its members and that no interest in the deeds of trust are transferred in its system. *Id*. at 3.

### A. Tender

Tender is required only when a foreclosure sale already has occurred and the plaintiff alleges irregularities in the foreclosure sale procedure. *Ohlendorf v. Am. Home Mortg. Servicing*, 279 F.R.D. 575, 580 (E. D. Cal. 2010) (tender is required only when plaintiff seeks to set aside a foreclosure sale); *Nugent v. Fed. Home Loan Mortg. Corp.*, No. CIV. S–09–2081 LKK/EFB, 2013 WL 1326425, at *7 (E. D. Cal. Mar.29, 2013) (same).  Because the foreclosure here has not yet occurred, plaintiff is not required to tender the amount of the indebtedness.

### B. Challenge to BofA's Authority to Foreclose; Declaratory Relief

Under 28 U.S.C. § 2201, a court may "declare the rights and other legal relations" of the parties to an actual controversy. "The Declaratory Judgment Act gives the Court the authority to declare the rights and legal relations of interested parties, but not a duty to do so." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008).  When the relief sought "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate proceedings and afford relief from uncertainty and controversy faced by the parties," a court need not grant declaratory relief. *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

In *Gomes v. Countrywide Home Loans, Inc.*, a California Court of Appeal held that California Civil Code § 2924(a)(1) does not "provide for a judicial action to determine whether the entity initiating the foreclosure is indeed authorized . . ." and said any "right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process . . . ." 192 Cal. App. 4th 1149, 1155 (2011).  In reaching its result, the court relied on California's "'comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.'" *Id*. (quoting *Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994)); *see also Rieger v. Wells Fargo Nat'l Ass'n*, No. 3:13-0749-JSC, 2013 WL 1748045, at *8 (N.D.

/////

1   Cal. Apr. 23, 2013) (relying on *Gomes* to reject the claim that a homeowner was entitled to
2   demand proof of the authority to foreclose).

3           Plaintiff contends that *Gomes* and the many cases relying on it do not apply
4   because, unlike the parties in *Gomes*, he has proof in the form of the quitclaim deed that MERS
5   lost its status as nominee when Plaza quitclaimed its interest.  ECF No. 10 at 11-13.  In addition,
6   he contends MERS's purported assignment in 2013 shows BofA lacked any interest when he
7   asked for its authority.  *Id*. at 11.  He also argues that provisions of the Homeowner's Bill of
8   Rights (HBOR), effective January 1, 2013, give him the authority to demand BofA provide a
9   copy of any assignment of the Deed of Trust supporting the right to foreclose.  *Id*. at 12-13; *see*
10  Cal. Civ. Code § 2923.55(b)(1)(B)(ii) (providing that a servicer may not record a notice of default
11  until it has, among other things, sent a notice that the borrower may request "a copy of any
12  assignment . . . of the borrower's mortgage or deed of trust required to demonstrate the right of
13  the mortgage servicer to foreclose." ).  As there is no allegation that BofA has recorded a notice
14  of default, plaintiff has not alleged a violation of this provision.

15          Defendants reply that Plaza quitclaimed its interest in the property, not in the Note
16  or Deed of Trust, because as the lender rather than the beneficiary under the Deed of Trust, it had
17  no legal interest to quitclaim to plaintiff.  Reply, ECF No. 16 at 3.  It says the lien on the property
18  is enforceable by the holder of the beneficial interest, which was MERS and subsequently BofA.
19  *Id*. at 4.

20          As plaintiff notes, *Gomes* and the cases that follow it say that trustors are not
21  allowed to delay the nonjudicial foreclosure process "by pursuing preemptive judicial actions
22  challenging the authority of a foreclosing 'beneficiary' or beneficiary's 'agent.'  Such an action is
23  'preemptive' if the plaintiff alleges no 'specific factual x' for the claim that the foreclosure was
24  not initiated by the correct person."  *Siliga v. Mortg. Electronic Registration Sys.*, 219 Cal. App.
25  4th 75, 82 (2013) (quoting *Jenkins v. JPMorgan Chase Bank N.A.*, 216 Cal. App. 4th 497, 512
26  (2013)).  Nothing in the record in this case shows that foreclosure proceedings have begun, so it is
27  unclear that the *Gomes* line of cases applies.   In addition, plaintiff has alleged a "specific factual
28  x"—the quitclaim deed from Plaza—in support of his claim.

"[A] quitclaim deed . . . effect[s] a transfer of 'all the right and title of the grantor.'" *City of Manhattan Beach v. Superior Ct.*, 13 Cal. 4th 232, 239 (1996) (quoting *Sullivan v. Davis*, 4 Cal. 291, 292 (1854)).  Neither side has cited any law examining the issue raised by plaintiff, but one commentator has said, "[a] quitclaim conveys all of the grantor's right, title, and interest in the property.  The lien of a mortgage or deed of trust is an 'interest' in the real property collateral and a 'right' to recover the debt from the collateral.  Therefore, it appears to follow that a quitclaim deed of the collateral from the beneficiary to the trustor accomplishes a release or reconveyance of the lien of the mortgage or deed of trust." Miller & Starr, California Real Estate (3d ed. 2011) § 10:140 (footnotes omitted).

"Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust.  Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as "nominee" for the lender, and granted the authority to exercise legal rights of the lender." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 267 (2011) (citation omitted).  The court in *Fontenot* rejected the claim that the designation of MERS as both beneficiary and nominee was problematical:  "There is nothing inconsistent in MERS's being designated both as the beneficiary and as a nominee, i.e., agent, for the lender.  The legal implication of the designation is that MERS may exercise the rights and obligations of a beneficiary of the deed of trust, a role ordinarily afforded the lender, but it will exercise those rights and obligations only as an agent for the lender, not for its own interests." *Id*. at 273.  In this case plaintiff alleges in essence that once Plaza quitclaimed its interest, MERS could no longer exercise the rights of the beneficiary on behalf of the lender.  However, the complaint also alleges that sometime before Plaza quitclaimed its interest to plaintiff, it endorsed the Note to Countrywide Bank FSB.  ECF No. 1 ¶ 33.  Plaintiff alleges the endorsement does not comply with California Civil Code § 2210, but this is a legal conclusion this court is not required to accept.  It also is nonsensical, as the section defines terms used in provisions relating to space flight liability and immunity.  Plaintiff will be given leave to amend this section of the complaint if he is able to do so consonant with Federal Rule of Civil Procedure 11.

/////

C. Injunctive Relief

Injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the moving party is entitled to such relief; it is never ordered as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To secure injunctive relief, plaintiff must show "'an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a *real or immediate threat* of an irreparable injury.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis in original) (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001)).

Plaintiff has alleged that BofA has threatened foreclosure, but has not pleaded or otherwise shown that it has recorded a Notice of Default or that foreclosure is imminent. He has not shown he is entitled to injunctive relief. He will be given an opportunity to amend this portion of his complaint if he is able.

D. Breach of the Implied Covenant of Good Faith

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992) (citing Restatement (Second) of Contracts § 205 (1981)). The goals and written terms of a contract determine the conduct that would be considered a breach of the duty of good faith and fair dealing. *Id.* at 373. "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E. D. Cal. 2010) (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008)) (emphasis in original). A party alleging a breach of the implied covenant must identify a

relationship between the defendant's wrongful conduct and the express terms or underlying purpose of the contract. *Carma Developers*, 2 Cal. 4th at 373.

In his complaint, plaintiff alleges that the Note and Deed of Trust "do not contain an express provision pursuant to which Moenig is not entitled to receive documentation from Plaza's assignees evidencing that their status as such is based on valid assignments." ECF No. 1 ¶ 63. He relies on California Civil Code § 1655, which provides that "[s]tipulations which are necessary to make a contract reasonable . . . are implied" to assert that "an implied provision . . . requiring B of A to prove that it holds a valid assignment is in keeping with Moenig's reasonable expectations . . . ." *Id.* ¶ 68.

Defendants argue that the loan documents and California law allow foreclosure to be initiated upon default and in light of plaintiff's admitted default, the initiation of foreclosure cannot breach the implied covenant of good faith. ECF No. 7 at 14. Plaintiff counters that "it stands to reason" that the deed would contain an implied covenant requiring BofA to document its authority to foreclose and "certainly" has an implied covenant not to pursue a wrongful foreclosure. ECF No. 10 at 14-15. In reply, defendants point to the allegations in the complaint that BofA provided material to plaintiff on four different occasions and says this satisfies whatever obligation it had. ECF No. 16 at 6.

Plaintiff has not identified an express provision of the contract to which his claim of implied covenant attaches but rather relies on circumlocution. Because he has not identified an express provision or even the underlying purpose giving rise to his claim of an implied covenant, his argument fails. Similarly, plaintiff suggests that a term requiring BofA to provide documentation must be implied because he believes it would be reasonable, but has provided no authority supporting his claim. Finally, "the underlying purposes of the promissory note and deed of trust are (1) that [plaintiff] shall be able to use the loaned funds on the terms and at the interest rate specified in the promissory note, and (2) that [the bank] shall have the security provided by the deed of trust." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 529 (2013). Plaintiff has neither explained nor cited authority explaining how these purposes give rise to an implied covenant not to foreclose wrongfully. This claim is dismissed without leave to amend.

As the court is granting the motion to dismiss, it denies the motion for a more definite statement as moot.

IT IS THEREFORE ORDERED that:

1. Defendants' motion to dismiss, ECF No. 7, is granted as set forth above; and

2. Plaintiff's amended complaint, limited to his claims for declaratory and injunctive relief, is due within twenty one days of the date of this order.

DATED:  October 22, 2014.

_____
UNITED STATES DISTRICT JUDGE

11